107 F.3d 2
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Dominic BRETTI, Petitioner-Appellant,
v.
Robert H. KUHLMAN, Superintendent, Sullivan Correctional
Facility, Respondent-Appellee.
 No. 96-2003.
 United States Court of Appeals, Second Circuit.
 Feb. 21, 1997.
 
 1
 APPEARING FOR PETITIONER-APPELLANT: ANTHONY PADUANO, Smith Campbell & Paduano, New York, NY.
 
 
 2
 APPEARING FOR RESPONDENT-APPELLEE: MARYANN WONG, Assistant Deputy Attorney General, New York State Organized Crime Task Force (Christopher G. Quinn, Deputy Attorney General), White Plains, NY.
 
 
 3
 Before JACOBS, CALABRESI and LAY,* Circuit Judges.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Northern District of New York, and was argued by counsel.
 
 
 5
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court is AFFIRMED.
 
 
 6
 Dominic Bretti was convicted of second degree murder following a jury trial in New York State Court in 1982. He was sentenced to 20 years to life imprisonment. After exhausting his state court remedies, Bretti filed a petition for habeas corpus under § 2254 in the District Court for the Northern District of New York. In his petition, Bretti argued that the trial court had abridged his constitutional rights to fair trial and confrontation of witnesses by refusing to admit exculpatory statements uttered by the confessed murderer. The district court found--as the trial court had found--that the refusal was not erroneous because the statements were inadmissible hearsay. The district court thus denied the habeas petition.
 
 I. Background
 
 7
 In December 1979, Dawn Grillo was reported missing from her home in Utica. On February 19, 1980, Anthony D'Amico was arrested by the Utica police on an unrelated charge. After he was processed at the Utica station, he was taken to the New Hartford station, where investigators asked him whether he knew anything about Grillo's disappearance. D'Amico answered that he hated Grillo, and that he knew where her body was. He then took the investigators to a ravine, where Grillo's body was found the next day.
 
 
 8
 D'Amico then indicated that he had more information, but would only disclose it on condition of immunity. The district attorney's office offered him immunity and confidentiality in exchange for information and grand jury testimony. D'Amico then gave oral and written statements regarding Grillo's murder. Two of these statements are at issue in the present case.
 
 
 9
 In the first statement, made on February 19, D'Amico confessed that he and Donato Nappi had murdered Grillo; said that he could not talk about the Petitioner-Appellant, Dominic Bretti, regarding Grillo; and surmised that Bretti had no reason to want Grillo dead; any knowledge of the Grillo murder must have reached Bretti via Nappi.
 
 
 10
 In the second statement, on February 22, D'Amico said that he had never spoken to Bretti about the Grillo murder; and that Bretti would not even let him mention Grillo's name.
 
 
 11
 D'Amico refused to testify before a grand jury that Bretti had ordered the Grillo murder. (He testified at an October 1991 suppression hearing that he had told the prosecutor that he wouldn't testify because it was not true.) Presumably because of this refusal, D'Amico's immunity was revoked and he was indicted, along with Bretti and Nappi, for conspiracy to commit murder and the murder of Dawn Grillo.
 
 
 12
 At trial in the New York Supreme Court, Herkimer County, the evidence consisted in part of the testimony of co-conspirator-turned-informant Anthony Mastracco and Bretti's recorded admissions (by wire via Mastracco). The trial court refused to allow Bretti to introduce D'Amico's exculpatory statements, on the ground that the statements were made under a promise of immunity, and therefore did not fall under the exception to the hearsay rule for "statements against penal interest." The trial court also did not allow Bretti to cross-examine Mastracco regarding his knowledge of D'Amico's exculpatory statements. Bretti moved for a severance, so that he would be able to call D'Amico at trial to establish his innocence; the motion was denied. Eventually the cases were severed (for other reasons); Bretti was still not permitted to introduce the exculpatory statements. Bretti and Nappi were found guilty of second degree murder on July 17, 1982.
 
 
 13
 Bretti's direct appeals in the state courts were denied. See People v. Bretti, 497 N.Y.S. 516 (4th Dep't 1985), aff'd, 510 N.Y.S.2d 77 (1986), reargument denied, 514 N.Y.S.2d 1028 (1987). He also applied for post-conviction relief in the state courts, which was denied. Bretti subsequently filed a petition for federal post-conviction relief. Following a report and recommendation from a magistrate judge in the Northern District of New York, (Di Bianco, M.J.), the district court for the Northern District of New York (McAvoy, Ch.J.) denied the petition on December 11, 1995, and granted a certificate of probable cause for appeal.
 
 II. Discussion
 
 14
 Federal habeas review of state criminal proceedings is limited to errors of constitutional magnitude. Smith v. Phillips, 455 U.S. 209, 221 (1982). Ordinarily, evidentiary rulings in a state court do not warrant habeas corpus relief. See Taylor v. Curry, 708 F.2d 886, 891 (2d Cir.1983). Erroneous exclusion of evidence warrants habeas relief only if the omission deprived the petitioner of a fundamentally fair trial. Estelle v. McGuire, 112 S.Ct. 475, 482 (1991).
 
 
 15
 Bretti's argument is both procedural and substantive: (1) procedurally, he argues that he was improperly denied a Settles hearing, pursuant to People v. Settles, 412 N.Y.S.2d 874 (N.Y.1978), to determine whether D'Amico's exculpatory statements were sufficiently against penal interest to qualify for the exception to the hearsay rule; (2) more substantively, he argues that D'Amico's statements, a) when made, were known by D'Amico to be adverse to his penal interests, and b) were sufficiently corroborated by supporting circumstances to establish their trustworthiness and reliability. See id., 412 N.Y.S.2d 882. He then asserts that these errors were material constitutional errors, warranting a grant of federal habeas.
 
 
 16
 To qualify for admission into evidence as a declaration against penal interest, the following elements must be met under New York law: 1) the declarant must be unavailable as a witness at trial; 2) when the statement was made, the declarant must have been aware that it was adverse to his penal interest; 3) the declarant must have competent knowledge of the facts underlying the statement; and 4) "most important[ly]," supporting circumstances independent of the statement itself must be present to attest to its trustworthiness and reliability. Settles, 412 N.Y.S.2d at 882.
 
 
 17
 Under New York law, a Settles hearing must be conducted "whenever there are unresolved factual issues concerning the reliability of the proffered statement." People v. Brensic, 517 N.Y.S.2d 120, 128 (N.Y.1987). Bretti argues that the district court improperly failed to conduct a Settles hearing to determine the admissibility of the exculpatory evidence. As the trial court determined at a suppression hearing in October 1991, D'Amico was acting under a grant of immunity for the Grillo murder at the time he made the exculpatory statements at issue. There was no further issue upon which to hold a Settles hearing: because D'Amico had been granted immunity, the statements were not against interest, and were therefore inadmissible.
 
 
 18
 Bretti argues that D'Amico's grant of immunity is not dispositive, because it was conditional, and was later withdrawn. However, there is nothing in the record to indicate that D'Amico knew that the grant of immunity was conditional, or had reason to anticipate that the grant would be withdrawn later. What is relevant here is D'Amico's state of mind at the time he made the statements; what happened to him later has no bearing on the question.
 
 
 19
 Bretti also argues that Mastracco should have been able to testify as to D'Amico's exculpatory statements. This argument fails for the same reasons: the portions of D'Amico's statements that allegedly exculpated Bretti were inadmissible hearsay, whether testified to at trial by D'Amico himself, Mastracco, or anyone else. The district court properly found that Bretti was given both opportunity and wide latitude to cross-examine Mastracco at trial. No federal constitutional right was violated by the trial court's refusal to admit inadmissible hearsay.
 
 
 20
 We have examined all of Bretti's arguments, and find them to be without merit. The judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation